IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-417-BO-KS

WILLIAM H. HOLLAND, and KATHLEEN )
HOLLAND, individually, and WILLIAM )
HOLLAND H. HOLLAND and KATHLEEN )
HOLLAND as parents and next friends of )
J.D.H., J.R.H., and J.H.H., )
 )
　　　Plaintiffs, )
 )
　　v. )　　　　　　　　　　MEMORANDUM &
 )　　　　　　　　　　RECOMMENDATION
NEW HANOVER COUNTY; NEW )
HANOVER COUNTY DEPARTMENT OF )
SOCIAL SERVICES; NEW HANOVER )
COUNTY HEALTH AND HUMAN )
SERVICES; TONYA JACKSON, in both )
her individual and official capacity as )
Director of New Hanover County DSS; )
DONNA FAYKO, in both her individual )
and official capacity as Health and Human )
Services Director of New Hanover County; )
MONA LEIPOLD, in both her individual )
and official capacity as attorney for New )
Hanover County DSS; and MARY BETH )
RUBRIGHT, in both her individual and )
official capacity as Assistant Director of )
Social Work for New Hanover County DSS, )
 )
　　　Defendants. )

　　This matter is before the court on Defendants Fayko, Jackson, and Rubright's

Joint Motion to Dismiss [DE #49]; Defendant New Hanover County's Joint Motion to

Dismiss [DE #51][1]; and Defendant Leipold's Motion to Dismiss [DE #54]. Plaintiff has responded in opposition [DE #56], and Defendants have replied [DE ##59–62].[2] Where the motions have been referred to the undersigned and the parties have not consented to the jurisdiction of the magistrate judge, the motions are undertaken pursuant to 28 U.S.C. § 636(b)(1)(B) for memorandum and recommendation. For the reasons below, it is recommended that the motions to dismiss be granted in part and denied in part.

<u>BACKGROUND</u>

This action concerns federal constitutional claims under 42 U.S.C. § 1983 (Eighth, Ninth, and Tenth Claims for Relief) and state tort claims (First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Claims for Relief) initially brought by Plaintiffs against Defendants in North Carolina state court on February 4, 2025. Plaintiffs filed an amended complaint, pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure, on February 25, 2025. (Am. Compl. [DE #1-3] at 65–70 & [DE #1-4] at 1–69 (hereinafter

---

[1] As will be explained in more detail, Plaintiffs have dismissed their official capacity claims against the named individual defendants and claims against the county Department of Social Services and Department of Health and Human Services. Accordingly, this motion to dismiss [DE #51] is now only New Hanover County's.

[2] Defendants Jackson, Fayko, and Rubright's reply briefs filed as DE #59 and DE #60 appear identical and were filed a few minutes apart with separate event names in CM/ECF. The undersigned considers DE #60 as these defendants' operative reply brief.

"Am. Compl.")[3].) On March 12, 2025, Defendant New Hanover County removed the case to this court pursuant to 28 U.S.C. § 1446(b) based on federal question jurisdiction. (Notice Removal [DE #1] at 2.)

The gravamen of Plaintiffs' lawsuit is that New Hanover County and the named individuals (high-level supervisors in New Hanover County's Department of Social Services ("DSS") and Department of Health and Human Services and an attorney for New Hanover County DSS) acted wrongly in the course of a state child-welfare proceedings against Plaintiffs William and Kathleen[4] Holland regarding their then-prospective adopted child, J.H.H.,[5] and their biological children, J.D.H. and J.R.H. The facts summarized below are drawn from Plaintiffs' complaint. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (all factual allegations in complaint are assumed true and construed in the light most favorable to the plaintiff on motion to dismiss).

Plaintiffs William and Kathleen Holland ("the Hollands") are parents of three minor children—J.D.H., J.R.H., and J.H.H. (collectively referred to as "the three Holland children"). (Am. Compl. ¶ 2.) At the time of the filing of the complaint, the children were 6, 4, and 2 years old, respectively. (*Id.*) The older two children are biological children of the Hollands, and J.H.H. is adopted. (*Id.*) In 2021, the Hollands

---

[3] The undersigned cites only to the specific paragraphs of the complaint because it spans two docket entries.

[4] William is sometimes referred to as "Hunter," and Kathleen as "Katie," in the complaint.

[5] J.H.H. has now been adopted by the Hollands. (Am. Compl. ¶ 2.)

3

applied for private adoption through Children at Heart Adoption Services, Inc. ("Children at Heart"). (*Id.* ¶ 35.) In late June 2022, Children at Heart informed the Hollands that J.H.H.'s birth mother had selected them as an adoptive family for J.H.H. (*Id.* ¶ 37.) Children at Heart knew that J.H.H.'s mother drank alcohol, smoked cigarettes, took Adderall and blood pressure medication during the pregnancy and declined medical care after being involved in a traffic accident in May 2022 during the latter stages of the pregnancy. (*Id.* ¶¶ 39–40.) The Hollands were generally aware that J.H.H. would likely require special medical needs. (*Id.* ¶ 41.) J.H.H. was born on July 3, 2022, tested positive for controlled substances at birth, and went home with the Hollands from the hospital on July 4, 2022. (*Id.* ¶¶ 42, 44.) Children at Heart retained legal custody of J.H.H. pending the adoption decree, but the Hollands were given physical custody, financial responsibility, and medical decision-making authority. (*Id.* ¶ 43.)

On September 21, 2022, the Hollands contacted their family pediatrician, Dr. Hoke Pollock, because J.H.H. had vomited and appeared unwell. (Am. Compl. ¶¶ 47, 49.) J.H.H. was seen by a physician's assistant at the pediatrician's office the next day and diagnosed with a stomach virus. (*Id.* ¶ 50.) J.H.H. did not improve and was seen by the pediatrician's office again on September 28, 2022. (*Id.* ¶ 51.) On October 3, 2022, J.H.H. was seen by Dr. Pollock. (*Id.* ¶ 53.) At that time, Dr. Pollock noticed that J.H.H.'s head "was bulging in the front fontanelle area and J.H.H. had 'sunsetting eyes.'" (*Id.*) J.H.H. was taken to an emergency department for a CT scan, which indicated "low density subdural collections throughout J.H.H.'s head and

4

spine." (*Id.* ¶¶ 54–55.) J.H.H. was airlifted to the University of North Carolina ("UNC") Medical Center in Chapel Hill for evaluation by the pediatric neurology department. (*Id.* ¶ 56.)

On October 4, 2022, J.H.H. underwent surgery. (Am. Compl. ¶ 61.) Pursuant to standard protocol for unexplained subdural hematoma, the neurosurgeon referred J.H.H. to the UNC Medical Center's Beacon Child Abuse Clinic ("UNC Beacon") for further evaluation. (*Id.* ¶ 62.) Because subdural hematomas are signs of possible abuse, UNC Medical Center made a report to New Hanover County DSS regarding J.H.H. on or about October 4, 2022. (*Id.* ¶ 63.) The report from UNC Medical Center stated that further tests would be conducted by UNC Beacon, with findings to be reported via a Child Medical Evaluation. (*Id.* ¶ 65.) Given J.H.H.'s hospitalization in Chapel Hill, New Hanover County DSS contacted Orange County DSS to conduct an initial investigation of the UNC Medical Center report. (*Id.* ¶ 67.) Orange County DSS implemented a safety plan, which required the three Holland children to live with Mrs. Holland's parents in Chapel Hill pending results of the UNC Beacon Child Medical Evaluation. (*Id.* ¶ 68.) The safety plan further prohibited the Hollands from having unsupervised contact with J.H.H while at UNC Medical Center. (*Id.* ¶ 69.) On October 4 and 5, 2022, J.H.H. underwent additional testing, including a full-body MRI and ophthalmic evaluation. (*Id.* ¶¶ 72–74.) These exams were negative for evidence of trauma. (*Id.*) The Hollands immediately reported the negative test results to Dr. Pollock and the New Hanover County DSS social worker assigned to the case. (*Id.* ¶ 75.)

5

Defendant Mona Leipold is an attorney with New Hanover County DSS. (Am. Compl. ¶ 14.) On October 10, 2018, Leipold informed Children at Heart that she would be filing a petition alleging abuse, neglect, and dependency ("petition") as to the three Holland children and requesting emergency non-secure custody of J.H.H. (Am. Compl. ¶ 81.) Counsel for Children at Heart informed Leipold that she wished to be present at any non-secure custody hearing. (*Id.* ¶ 83.) Leipold agreed to counsel's request but reneged on that promise. Non-secure custody of J.H.H. was ordered mid-morning on October 10, 2022, without counsel for Children at Heart being present and without the court having been advised of Children at Heart's objection and request to be heard. (*Id.* ¶¶ 87, 89.) That same day, New Hanover County DSS informed the Hollands of the non-secure custody order and petition, took custody of J.H.H. at UNC Medical Center, and told the Hollands to leave the hospital. (*Id.* ¶ 94.) Later that day, Defendant Tonya Jackson, Director of New Hanover County DSS, delivered a document to UNC Medical Center authorizing foster parents to consent to medical treatment of J.H.H. (*Id.* ¶¶ 5, 96.) New Hanover County DSS provided false information to the foster parents regarding J.H.H. and mischaracterized J.H.H.'s medical needs. (*Id.* ¶¶ 96–97.) New Hanover County DSS did not take custody of the Hollands' biological children, J.D.H. and J.R.H., but "pressured the Hollands to continue the Safety Plan via threats communicated by Leipold to file for nonsecure custody of J.D.H. and J.R.H." (*Id.* ¶ 98.) J.H.H. was placed in non-secure custody with foster parents in New Hanover County despite his medical providers being located in Chapel Hill. (*Id.* ¶ 114.)

6

On October 18, 2022, Child Medical Evaluations for J.D.H. and J.R.H. were conducted and indicated no evidence of abuse or neglect. (Am. Compl. ¶¶ 118–19.) Despite the findings of the Child Medical Evaluations, New Hanover County DSS refused to lift or revise the safety plan that required separation of J.D.H. and J.R.H. from the Hollands. (*Id.* ¶ 120.) Based on Leipold's prior threats and misrepresentations, the Hollands feared that New Hanover County DSS would seek non-secure custody of J.D.H. and J.R.H. if they challenged the safety plan. (*Id.* ¶¶ 121–22.) It was not until December 7, 2022, that the safety plan regarding J.D.H. and J.R.H. was lifted by New Hanover County DSS. (*Id.* ¶ 194.)

During October and November 2022, J.H.H. underwent additional medical treatment and testing. On October 30, 2022, a follow-up full-body MRI of J.H.H. confirmed no fractures. (Am. Compl. ¶ 127.) The next day, UNC Medical Center surgeons advised New Hanover County DSS that J.H.H. would need additional cranial surgery. (*Id.* ¶ 134.) Defendant Mary Beth Rubright, Assistant Director of Social Work for New Hanover County DSS, allowed the foster parents to make medical decisions regarding J.H.H. (*Id.* ¶ 146.) New Hanover County DSS did not participate in decisions with the medical providers and did not consult with the Hollands or Children at Heart regarding the second surgery for J.H.H. (*Id.* ¶¶ 147– 48.) J.H.H. underwent a second surgery on November 4, 2022, which consisted of placement of a cranial shunt. (*Id.* ¶ 149.) J.H.H. underwent additional surgeries at UNC Medical Center on November 16 and 24, 2022. (*Id.* ¶¶ 160, 183.) UNC Medical

Center discharged J.H.H. to the foster parents two weeks after the last surgery, over the objections of William and Kathleen. (*Id.* ¶ 186.)

UNC Beacon had completed J.H.H.'s Child Medical Evaluation on November 9, 2022, prior to his surgeries on November 16 and 24, 2022. (Am. Compl. ¶ 154.) The report "could not conclude abuse of J.H.H. because no other injuries associated with abuse were present following extensive testing." (*Id.* ¶ 155.) New Hanover County DSS received this report on November 9, 2022, but continued to represent in at least five court hearings that "evidence of abuse supported continuation" of J.H.H. in non-secure custody. (*Id.* ¶¶ 156–57.)

On December 7, 2022, New Hanover County DSS placed the Hollands on the Responsible Individuals List, a "child abuse registry" that identifies individuals deemed responsible in substantiated cases of abuse or serious neglect. (Am. Compl. ¶¶ 187, 189.) New Hanover County DSS knew there was no basis for placing the Hollands on the registry. (*Id.* ¶ 190.) New Hanover County DSS placed the Hollands on the registry with the intent to injure and damage the Hollands' reputation and to hurt the Hollands' ability to finalize adoption of J.H.H. (*Id.* ¶ 193.)

New Hanover County DSS held a staff meeting regarding J.H.H.'s case in mid-November 2022 and decided to request an additional Child Medical Evaluation from Duke Child Abuse and Neglect Medical Evaluation Clinic. (Am. Compl. ¶ 215.) Duke denied the request. (*Id.*) New Hanover County DSS also requested that J.H.H.'s Child Medical Evaluation be reviewed by a different provider, but UNC Beacon denied this request. (*Id.* ¶ 217.)

8

On February 9, 2023, a recorded Webex meeting was held to review J.H.H.'s Child Medical Evaluation findings, which included testimony from the lead UNC Beacon pediatrician. (Am. Compl. ¶ 218.) During this meeting, the UNC Beacon pediatrician stated that "she could not conclude abuse to J.H.H. and observed no injuries to J.H.H. supporting abusive head trauma." (*Id.* ¶ 220.) Despite the testimony from the UNC Beacon pediatrician, New Hanover County DSS refused to dismiss the petition. (*Id.* ¶ 222.)

On February 10, 2023, New Hanover County DSS received three expert medical reports from the Hollands. (Am. Compl. ¶¶ 223–24.) These reports unanimously indicated that J.H.H.'s medical condition occurred before or during birth and not as a result of child abuse. (*Id.*) Despite receipt of these expert reports, New Hanover County DSS refused to dismiss the petition. (*Id.* ¶ 225.) An adjudicatory hearing regarding the petition was scheduled for March 1, 2023, but Leipold objected to proceeding with the hearing absent live testimony from the lead UNC Beacon pediatrician. (*Id.* ¶ 227.) This resulted in further delay of the adjudicatory hearing until April 11, 2023, which also caused further separation of the Hollands from J.H.H. (*Id.* ¶¶ 227–28.) Following a hearing, on April 11, 2023, the state juvenile court found that New Hanover County DSS had failed to meet its burden of proof and dismissed the petition against the Hollands. (*Id.* ¶¶ 231–32.)

## DISCUSSION

### I.      Posture and Remaining Claims & Defendants

Plaintiffs have filed three notices voluntarily dismissing certain parties or claims. (5/6/2025 Notice Voluntary Dismissal [DE #45] (dismissing without prejudice Defendant New Hanover County DSS and Defendant New Hanover County Department of Health and Human Services); 7/28/2025 Notice Voluntary Dismissal [DE #58] (dismissing without prejudice official-capacity claims against Defendants Jackson, Fayko, Rubright, and Leipold; Fourteenth Claim for Relief (Slander); and Fifteenth Claim for Relief (Libel)); 9/25/2025 Notice Voluntary Dismissal [DE #64] (dismissing without prejudice negligence-based claims against Defendant New Hanover County (Fourth and Fifth Claims for Relief) and Defendants Jackson, Fayko, Rubright, and Leipold in their official capacities (First, Second, Third, Sixth, Seventh, and Thirteenth Claims for Relief).) Accordingly, the following claims remain pending and will be analyzed:[6]

- First Claim for Relief (Negligence against Defendant Leipold in her individual capacity);

- Second Claim for Relief (Negligence against Defendants Jackson, Fayko, and Rubright in their individual capacities);

- Third Claim for Relief (Gross Negligence against Defendants Leipold, Jackson, Fayko, and Rubright in their individual capacities);

---

[6] It is recommended that Defendants' motions to dismiss be denied as moot with regard to any of the claims voluntarily dismissed by Plaintiffs.

- Sixth Claim for Relief (Negligent Supervision against Defendants Jackson, Fayko, and Rubright in their individual capacities);

- Seventh Claim for Relief (Gross Negligent Supervision against Defendants Jackson, Fayko, and Rubright in their individual capacities);

- Eighth Claim for Relief (§ 1983 against Defendants Jackson, Fayko, Rubright, and Leipold in their individual capacities);

- Ninth Claim for Relief (§ 1983 against Defendant New Hanover County);

- Tenth Claim for Relief (§ 1983 Defendant New Hanover County and Defendants Jackson, Fayko, Rubright, and Leipold in their individual capacities);

- Eleventh Claim for Relief (state-based Civil Conspiracy against Defendant New Hanover County and Defendants Jackson, Fayko, Rubright, and Leipold in their individual capacities); and

- Twelfth Claim for Relief (Intentional Infliction of Emotional Distress against Defendant New Hanover County, and Defendants Jackson, Fayko, Rubright, and Leipold in their individual capacities).

Defendants raise various immunity-based defenses (under both federal and state law) and argue that Plaintiffs have failed to state claims upon which relief may be granted. Defendants Jackson, Fayko, and Rubright also argue that Plaintiffs have insufficiently pleaded whether the claims against them are official-capacity or individual-capacity claims. (Defs. Jackson, Fayko, & Rubright's Mem. Supp. Mot.

11

Dismiss [DE #50] at 6–7.) The undersigned will first discuss the official/individual capacity and immunity arguments before analyzing each claim in turn.

## II.    Official/Individual Capacity

"[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995). *Biggs* sets forth several factors a court should consider when confronted with a complaint that does not specifically allege capacity. *Id.* at 61. However, it is unnecessary for a court to analyze the *Biggs* factors when a complaint specifically alleges the capacity in which a governmental defendant is being sued. *Gregory v. Currituck Cnty.*, No. 21-1363, 2022 WL 1598961, at *2 (4th Cir. May 20, 2022) (citing *Amos v. Md. Dep't Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997)).

The caption of the complaint expressly notes that Defendants Jackson, Fayko, and Rubright are sued in their individual capacities. (Am. Compl.) Defendants concede as much in their brief but seek to impose North Carolina procedural pleading standards. (Defs. Jackson, Fayko, & Rubright's Mem. Supp. Mot. Dismiss at 6–7 (arguing, based on two North Carolina Supreme Court opinions and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, that this court "must presume" that they are being sued in their official capacities only).) Defendants Jackson, Fayko, and Rubright cite no authority as to why this court should apply North Carolina procedural pleading standards to a case removed to federal court. (*Id.*); *compare Stover v. Coll. of William & Mary*, 635 F. Supp. 3d 429, 445 (E.D. Va. 2022) ("In claims

arising out of supplemental jurisdiction, district courts apply federal procedural law and state substantive law." (citing numerous cases, including *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))); 14C Wright & Miller, Fed. Prac. & Proc. § 3738 (Rev. 4th ed. Sept. 2025 Update) ("[I]t has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters."). Accordingly, Defendants Jackson, Fayko, and Rubright's argument that Plaintiff has only pleaded claims against them in their official capacities should be rejected.

## III. Prosecutorial Immunity

Defendant Leipold raises the defense of absolute prosecutorial immunity as to the claims against her, arguing that her actions were "intimately associated with the judicial process." (Def. Leipold's Mem. Supp. Mot. Dismiss [DE #55] at 6–9). Plaintiffs argue that while Leipold is entitled to prosecutorial immunity for her actions in prosecuting the petition and seeking non-secure custody placement of J.H.H., they have also sued Leipold for actions she undertook as an investigator and witness. (Pls.' Resp. Opp'n Mot. Dismiss [DE #56] at 11–12.)

Prosecutors, including attorneys who work for a department of social services, are immune from individual liability for acts taken in carrying out their prosecutorial functions. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 135 (4th Cir. 1989). An action is prosecutorial, rather than investigative, when it is "closely associated with the judicial process." *Burns v. Reed*, 500 U.S. 478, 495 (1991). Prosecutorial immunity shields a wide range of conduct by

13

DSS attorneys that is closely associated with the judicial process, including the filing of petitions and even the intentional misrepresentation of facts within those petitions. *Vosburg*, 884 F.2d at 135; *see Sahoo v. Gleaton*, No. 5:16-CV-153-F, 2017 WL 1102623, at *6 (E.D.N.C. Mar. 23, 2017).

Here, Defendant Leipold filed a petition alleging abuse, neglect, and dependency as to the three Holland children and requested emergency non-secure custody as to J.H.H. on October 10, 2022. (Am. Compl. ¶ 86.) Her actions after filing the petition, including representing New Hanover County DSS during the proceedings, providing advice and guidance during the investigative phase, and arguing in court, were all closely associated with the child welfare proceedings. (Am. Compl. ¶¶ 108, 202–03, 205.) Plaintiffs' operative complaint fails to support the inference that Leipold acted as a witness or an investigator such that her actions fall outside the scope of absolute prosecutorial immunity. Filing a petition, gathering evidence for the petition, and working with the social workers of New Hanover County DSS over the course of the child welfare proceedings in state court are all matters undertaken in her role as an advocate and entitle her to "the same protection . . . that she would have if she were representing the state in a criminal proceeding." *Shirley v. Drake*, 176 F.3d 475, 1999 WL 202671, at *2 (4th Cir. 1999) (Table). Defendant Leipold is therefore entitled to absolute prosecutorial immunity. The individual-capacity claims against Leipold should therefore be dismissed.

14

## IV.    Qualified Immunity

Defendants Jackson, Fayko, and Rubright raise qualified immunity as an affirmative defense to several claims. "Qualified immunity protects public officials from suit when the state of the law is such that they would not have known that their conduct violates statutory or constitutional rights." *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 395 (4th Cir. 2014). To establish qualified immunity as an affirmative defense, "a public official must demonstrate that (1) a plaintiff has not alleged facts that 'make out a violation of a constitutional right,' or that (2) 'the right at issue was [not] clearly established at the time of' its alleged violation." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

A defendant is permitted to raise this affirmative defense in a Rule 12(b)(6) motion, but doing so at such an early stage in the litigation requires overcoming a "formidable hurdle." *Long v. City of Concord*, 623 F. Supp. 3d 647, 656 (E.D.N.C. 2022) (citing *Owens*, 767 F.3d at 396). This is so because a complaint should not be dismissed as long as a plaintiff "provides sufficient detail about [the] claim[s] to show . . . a more-than-conceivable chance of success on the merits." *Long*, 623 F. Supp. 3d at 656 (quoting *Owens*, 767 F.3d at 396). The undersigned addresses Defendants' qualified immunity defense below, in the context of the relevant claims for relief.

## V.    Governmental Immunity

Defendant New Hanover County invokes governmental immunity as to the state-law claims against it (Eleventh and Twelfth Claims for Relief), contending that its liability insurance policy expressly preserves its governmental immunity. (Def.

15

New Hanover County's Mem. Supp. Mot. Dismiss [DE #52] at 14 & Ex. A [DE #52-1] at 15 ("Liability Policy Governmental Immunity Preservation").)

Under North Carolina law, "governmental immunity serves to protect a municipality . . . from suits arising from torts committed while the officers or employees are performing a governmental function." *Fullwood v. Barnes*, 250 N.C. App. 31, 37, 792 S.E.2d 545, 550 (2016) (quoting *Schlossberg v. Goins*, 141 N.C. App. 436, 439, 540 S.E.2d 49, 52 (2000)). "Services provided by local Departments of Social Services are governmental functions to which governmental immunity applies." *Whitaker v. Clark*, 109 N.C. App. 379, 381, 427 S.E.2d 142, 143 (1993). Local government entities can waive governmental immunity by, among other things, purchasing liability insurance. *Fox v. City of Greenville*, No. 4:23-CV-133-M, 2024 WL 3093583, at *8 (E.D.N.C. June 21, 2024); N.C. Gen. Stat. § 153A-435(a) ("Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function.").

Plaintiffs' amended complaint alleges that Defendant New Hanover County has waived its immunity "by the purchase of insurance and/or participation in the North Carolina Association of County Commissioners Risk Management Pool." (Am. Compl. ¶ 26.) Because governmental immunity is a question of jurisdiction, the court does not accept these allegations as true and may consider evidence outside of the pleadings without converting this motion to dismiss into one for summary judgment. *Fox*, 2024 WL 3093583, at *8; *Doriety v. Sletten*, No. 1:23-CV-211, 2023 WL 4872570,

16

at *1 (M.D.N.C. July 28, 2023) (citing *Torres v. City of Raleigh*, 887 S.E.2d 429, 433 (N.C. Ct. App. 2023)); *Barrett v. Bd. of Educ. Johnston Cnty.*, 13 F. Supp. 3d 502, 514 (E.D.N.C. 2014), *aff'd on other grounds*, 590 F. App'x 208 (4th Cir. 2014).

Defendant New Hanover County has submitted an affidavit from the County's Risk Manager that includes the County's umbrella insurance policy. (Def. New Hanover Cnty.'s Mem. Supp Mot. Dismiss, Ex. A [DE #52-1].) The policy includes an endorsement that expressly states "purchase of this policy is not a waiver, under North Carolina General Statute . . . 153A-435 or any amendments to those sections, of any governmental immunity that would be available to any insured had you not purchased this policy." (Liab. Pol'y Gov'tal Immunity Preserv.) The endorsement also states that the policy provides tort liability coverage "only to the extent that such tort liability is not subject to any defense of governmental immunity under North Carolina law." (*Id.*) The text of this endorsement is identical to that at issue in *Fox*, 2024 WL 3093583, at *8. Plaintiffs have offered only counterargument interpreting the policy's language and concede that "their State-based claims against [the County] may lack personal jurisdiction if the Court finds the exception language of [the County]'s applicable insurance policies valid and enforceable. (Pls.' Resp. Opp'n Mots. Dismiss [DE #56] at 18–19.) The undersigned discerns no reason to distinguish the text of the insurance endorsement here from that in *Fox*, and, therefore, finds that New Hanover County has not waived its governmental immunity. Accordingly, the state-law claims (Eleventh and Twelfth Claims for Relief) against Defendant New Hanover County should be dismissed.

## VI.    Rule 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint or any claims contained therein that fail to state a claim upon which relief can be granted. The intent of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The court assumes the truth of all facts alleged in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[s] all reasonable inferences in favor of the plaintiff," *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To survive a 12(b)(6) motion, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not contain detailed factual allegations, but it must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Id.* A "formulaic recitation of the elements of a cause of action will not do." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which are sufficient to raise a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Facial plausibility is more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. It requires the plaintiff to articulate facts "that allow[] the court to draw the reasonable inference that the

18

defendant is liable for the misconduct alleged." *Id.*; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

### A. Federal Question Claims (Eighth, Ninth, & Tenth Claims for Relief)

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. A plaintiff must allege facts to support the following findings: (1) he has been deprived of a federal right and (2) the person who deprived him of his federal right did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

To establish liability against a local governmental entity under § 1983, a plaintiff must show the alleged constitutional violation is attributable to an official policy, procedure, or custom of the governmental entity. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Merely identifying conduct attributable to a local governmental entity through its final policymakers is not sufficient. *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 524 (4th Cir. 2000). A plaintiff must show that the local governmental entity's decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 411 (1997). Deliberate indifference requires proof that the governmental actors "disregarded a known or obvious consequence" of their actions. *Id.* at 410.

19

1. Eighth Claim for Relief – Due Process

In their Eighth Claim for Relief, Plaintiffs allege violation of their federal constitutional rights under the First Amendment (Am. Compl. ¶¶ 355–56), Fourth Amendment (*id.* ¶ 354), and Fourteenth Amendment (*id.* ¶¶ 336–39, 351, 353, 356–58). As to the Fourteenth Amendment, Plaintiffs allege both substantive and procedural due process claims.

The First Amendment and Fourth Amendment claims should be dismissed. The First Amendment claim is based on the right to familial association. Plaintiffs rely on the same factual allegations for the First Amendment claim as they do for the Fourteenth Amendment claims. The claim is more properly analyzed under the Fourteenth Amendment. *See Evans v. Pitt Cnty. Dep't of Soc. Servs.*, 972 F. Supp. 2d at 778, 795–96 (E.D.N.C. 2013) ("Plaintiff's familial association claim under the First Amendment is essentially a restatement of Plaintiff's Due Process claim under the Fourteenth Amendment."), *vacated on other grounds by Evans v. Perry*, 578 F. App'x 229 (4th Cir. 2014). Accordingly, Plaintiffs' First Amendment claim should be dismissed.

As to the Fourth Amendment claim (Am. Compl. ¶ 354), the Fourth Circuit has not "articulated the legal standard that applies to Fourth Amendment unlawful seizure claims in the child removal context." *Parker v. Henry & William Evans Home for Children, Inc.*, 762 F. App'x 147, 154 (4th Cir. 2019). Due to the lack of clarity regarding Fourth Amendment claims in the child removal context, courts within the Fourth Circuit have generally dismissed such claims based on qualified immunity, as

the Fourth Circuit did in *Parker*. *See Stoots v. Sparti*, No. 7:22-CV-196, 2023 WL 6447317, at *9 (W.D. Va. Sept. 29, 2023); *Rogers v. Cumberland Cnty. Dep't Soc. Servs.*, No. 5:20-CV-477-BO, 2020 WL 921646, at *12 (E.D.N.C. Nov. 24, 2020), *M. & R. adopted*, 2021 WL 916924 (E.D.N.C. Mar. 10, 2021). Accordingly, this court should follow suit—Plaintiff's conclusory allegation of a Fourth Amendment violation is insufficient to state a claim, and even if it were, the individual Defendants would be entitled to qualified immunity.

The procedural due process claim should also be dismissed. To state a procedural due process claim, a plaintiff must show "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (quoting *Stone v. Univ. Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). As will be discussed below, Plaintiffs allege numerous facts relevant to a substantive due process claim. But there are no factual allegations tending to show that the procedures employed in the state juvenile case were constitutionally inadequate. For example, allegations that Defendants misrepresented evidence in court or delayed withdrawal of the safety plan do not show insufficient process. Plaintiffs' conclusory assertion of a procedural due process violation is not sufficient to state a claim. (*See* Am. Compl. ¶ 353.)

Plaintiffs have plausibly alleged violations of their substantive due process rights to familial integrity. (Am. Compl. ¶¶ 336–39, 351, 353, 357.) Substantive due

process claims require proof of state action that "shocks the conscience." *Rogers*, 2020 WL 9216464, at *8 (first quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); and then citing *Sahoo*, 2017 WL 1102623, at *8); *see also Parker*, 762 F. App'x at 156 ("We have repeatedly held that where officials remove a child from the parents' custody for the child's protection, only an 'abuse of power which "shocks the conscience" creates a substantive due process violation.'" (quoting *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 322 (4th Cir. 2009))). The right to familial integrity that Plaintiffs seek to vindicate in this lawsuit is sufficiently recognized. *See, e.g., Rogers*, 2020 WL 9216464, at *8.

Plaintiffs have alleged that Defendants continued in the prosecution of the petition, seeking non-secure custody placement of J.H.H. and out-of-home placement for J.D.H. and J.R.H., for several months after Defendants became aware they lacked evidence to support the petition. (Am. Compl. ¶ 342.) As to J.D.H. and J.R.H., the complaint alleges that the safety plan was not lifted until December 7, 2022, despite the Child Medical Evaluations of these minor Plaintiffs being completed and showing no evidence of abuse on October 18, 2022. (*Id.* ¶¶ 118–22, 194.) Furthermore, Plaintiffs have alleged that Defendants placed the Hollands on the child abuse registry without any evidence to support their actions and nearly one month after receiving the UNC Beacon Child Medical Evaluation report stating that there could be no conclusion of abuse. (*Id.* ¶¶ 187–91.) Moreover, it is alleged that Defendant Leipold threatened to petition for non-secure custody of J.D.H. and J.R.H. if Plaintiffs challenged the safety plan even after Leipold became aware there was no evidence of

22

abuse or neglect. (*Id.* ¶¶ 98, 122.) The complaint also alleges Defendants knowingly made a false report to law enforcement, leading to a criminal investigation and threat of criminal prosecution. (*Id.* ¶¶ 138–44.) At this early stage of the litigation, Plaintiffs J.D.H, J.R.H., and the Hollands have pleaded sufficient facts from which it could reasonably be inferred that the conduct of Defendants violated their substantive due process rights to familial integrity.

As to J.H.H., the analysis is slightly different. His pre-adoption status at the time of the alleged wrongdoing (roughly October 2022 through April 2023) precludes such a finding as to familial integrity. *See Cox v. Med. Coll. of Wisconsin Inc.*, 651 F. Supp. 3d 965, 1001–07 (E.D. Wisc. 2023); *Mullins v. Oregon*, 57 F.3d 789, 794 (9th Cir. 1995) (prospective adoptive parents have no fundamental liberty interest in association with prospective adoptive child); *Behrens v. Regier*, 422 F.3d 1255, 1264 (11th Cir. 2005). However, when Defendants involuntarily removed J.H.H. from the Hollands' care via the motion for non-secure custody, Defendants triggered "a duty not to make a foster care placement that [was] deliberately indifferent to [J.H.H.]'s right to personal safety and security." *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010).

The complaint contains factual allegations from which it could be reasonably inferred that Defendants were deliberately indifferent to J.H.H.'s personal safety and security when they placed him in non-secure custody with the foster parents. For example, the complaint alleges (i) Defendants provided false medical history to the foster parents (Am. Compl. ¶¶ 96–97); (ii) the foster parents had no experience or

23

training to care for J.H.H. (*id.* ¶ 114); (iii) the foster parents failed to seek medical care for J.H.H.'s "extreme cranial swelling" for five days after the Hollands observed and reported the swelling during a supervised visitation (*id.* ¶ 125); (iv) Defendants did not participate in discussions related to J.H.H.'s second surgery and did not consult with Children at Heart or the Hollands (*id.* ¶¶ 147–48); (v) Defendants failed to seek specialized neurological care for J.H.H. despite being on notice of neurological problems (*id.* ¶¶ 150–52); (vi) Defendants only sought medical care regarding the shunt failure, which led to J.H.H.'s third surgery, after the Hollands notified Defendants following a supervised visit on November 10, 2022 (*id.* ¶¶ 158–59); (vii) Defendants failed to notice that J.H.H. had spinal fluid leaking from his skull and down the side of his face while at New Hanover County DSS' office (*id.* ¶¶ 171–79); and (viii) the foster parents selected by Defendants could not recognize the serious medical issues J.H.H. was experiencing and even denied that J.H.H. had been running a fever (*id.* ¶ 180). These allegations are sufficient to support J.H.H.'s substantive due process claim against Defendants.

Defendants Jackson, Fayko, and Rubright argue they are entitled to qualified immunity for Plaintiffs' due process claims. (Defs. Jackson, Fayko, & Rubright's Mem. Supp. Mot. Dismiss at 12–15.) They contend there was no constitutional violation of the right to familial privacy, and that, even if there were, the right to familial privacy was not clearly established. (*Id.* at 13–15.) But the substantive due process caselaw discussed above predates the factual allegations in the complaint. Furthermore, the gravamen of Defendants' argument is that the complaint fails to

allege "anything more than proper investigation into the allegations made by UNC Beacon" and "the fact that the investigation ultimately proved that no child abuse occurred does not equate to a finding" that the investigation was undertaken in "bad faith." (*Id.* at 14.) But Defendants' position shows precisely why defendants seeking to invoke the protections of qualified immunity at the motion to dismiss stage face a formidable hurdle—whether the investigation into child abuse and prosecution of the petition were "proper" is a fact-intensive inquiry. Plaintiffs have pleaded sufficient facts from which it could be reasonably inferred that Defendants' actions were not "proper." Accordingly, Defendants Jackson, Fayko, and Rubright should be denied qualified immunity at this early stage of the litigation.

2.     Ninth Claim for Relief – *Monell* Due Process

Plaintiffs' Ninth Claim for Relief is a *Monell* claim against Defendant New Hanover County based on the substantive due process violations discussed above. The County's chief arguments are that Plaintiffs have failed to plead a plausible *Monell* claim because (i) the complaint fails to point to a specific policy or custom "as the catalyst of any perceived constitutional violation" (Def. New Hanover Cnty.'s Mem. Supp. Mot. Dismiss at 20), and (ii) the complaint fails to identify the specific policymaking authority for each alleged policymaker (Def. New Hanover Cnty.'s Reply [DE #61] at 5). The latter argument should be rejected at this stage of the litigation because it involves factual questions about which, if any, of the individual Defendants had policymaking authority that could subject the County to *Monell* liability. As to the argument regarding the complaint's failure to identify a specific

25

policy or custom that caused the alleged due process violations, the complaint's factual allegations are admittedly thin. However, Plaintiffs have pleaded that (i) the individual Defendants' actions were made collectively or ratified by the County and (ii) Defendant Leipold represented to the court that the actions taken with regard to the Holland children were consistent with years of County policy. (Am. Compl. ¶¶ 201–02, 205, 250–54.) At this early stage of the litigation, these factual allegations are sufficient to meet the plausibility standard necessary to survive a motion to dismiss. *See Twombly*, 550 U.S. at 570.

### 3. Tenth Claim for Relief – Equal Protection

Plaintiffs allege that Defendants violated their right to equal protection. (Am. Compl. ¶¶ 386–92.) To survive a motion to dismiss an equal protection claim, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011). Plaintiffs allege that Defendants treated them differently because of J.H.H.'s pre-adoption status (Am. Compl. ¶ 387) but offer only conclusory assertions regarding other comparators (*id.* ¶¶ 390–91). There are no factual allegations that would support a reasonable inference that Defendants treated Plaintiffs differently because of class-based animus towards children and parents in pre-adoptive status. *See Equity in Athletics*, 639 F.3d at 108; *SAS Associates 1, LLC v. City Council for Chesapeake*, 91 F.4th 715, 723 (4th Cir. 2024)

("Pleadings that simply state the elements of an equal protection claim are insufficient.").

To whatever extent Plaintiffs assert discrimination based on a class of one theory, *see generally Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601–02 (2008) (discussing class of one equal protection claims), such a claim fails because Plaintiffs have failed to plead facts that would "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves," *SAS Associates 1*, 91 F.4th at 722 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). The gravamen of Plaintiffs' equal protection claim is that there was "no rational basis for the arbitrary and capricious decision [by Defendants] to afford the protection of due process to some individuals while ignoring them for others." (Am. Compl. ¶ 389.) But using this type of factual allegation to justify denial of a motion to dismiss an equal protection claim would be tantamount to transforming every due process claim into an equal protection claim. Accordingly, Plaintiffs' equal protection claim should be dismissed for failure to state a claim upon which relief can be granted. *See SAS Associates 1*, 91 F.4th at 723 (applying the facial plausibility standard under *Twombly* to class of one equal protection claim).

### B. State Law Claims (First, Second, Third, Sixth, Seventh, Eleventh, & Tenth Claims for Relief)

#### 1. First Claim for Relief – Negligence against Leipold

For the reasons previously discussed, Defendant Leipold is entitled to prosecutorial immunity. Accordingly, Plaintiffs' First Claim for Relief should be dismissed.

27

2. Second Claim for Relief – Negligence against Jackson, Fayko, & Rubright

Defendants Jackson, Fayko, and Rubright make two arguments to support their motion to dismiss the negligence claim. First, they argue entitlement to public official immunity, a state-based immunity that protects public officials from "personal liability for mere negligence in the performance of [their] duties." *Perry v. Pamlico Cnty.*, 88 F. Supp. 3d 518, 533 (E.D.N.C. 2015) (quoting *Slade v. Vernon*, 110 N.C. App. 422, 428, 429 S.E.2d 744, 747 (1993)); (Defs. Jackson, Fayko, & Rubright's Mem. Supp. Mot. Dismiss at 7–11). Second, Defendants argue Plaintiffs have failed to plead factual allegations from which it could reasonably be inferred that Defendants breached a legal duty they owed to Plaintiffs. (Defs. Jackson, Fayko, & Rubright's Mem. Supp. Mot. Dismiss at 18–19 ("Plaintiffs have alleged no specific breach of the Defendants' duties that would entitle them to relief.").) These arguments are unpersuasive for the following reasons.

First, public officials are not entitled to public official immunity if their actions were corrupt, malicious, or outside the scope of their official duties. *See Perry*, 88 F. Supp. 3d at 533. Plaintiffs have pleaded facts from which it could reasonably be inferred that Defendants acted with malice or corruption. (*See, e.g.,* Am. Compl. ¶¶ 78–79, 97–98, 100–06, 111, 114–20, 128, 138–44, 146, 156–57, 162, 165–66, 169, 179, 187–98, 200–03, 205, 208–10, 216, 222–25, 234–39, 248–49, 251–55.) Accordingly, at this stage of the litigation, Defendants are not entitled to public official immunity.

Second, Plaintiffs have sufficiently pleaded facts from which it could reasonably be inferred that Defendants breached their duty to act in the best interest of the minor Plaintiffs. Similar to the above analysis regarding the due process claims, the complaint contains factual allegations from which it could reasonably be inferred that Defendants breached their duty to act in the best interests of J.H.H. by continuing to prosecute the child welfare proceedings and by taking other action against the Hollands despite a lack of evidence to support the petition and the continued non-secure custody of J.H.H. Moreover, as to J.R.H. and J.D.H., the complaint contains factual allegations that could support an inference that Defendants' insistence on continued out-of-home placement for these Plaintiffs harmed their best interests. Plaintiffs have therefore pleaded sufficient facts to survive Defendants' motion to dismiss the negligence claim. *See Twombly*, 550 U.S. at 570.

> 3. Remaining Negligence-Based Claims against Defendants Leipold, Jackson, Fayko, & Rubright (Third, Sixth, and Seventh Claims for Relief)

For the reasons previously discussed, Defendant Leipold is entitled to prosecutorial immunity. Accordingly, Plaintiffs' remaining negligence-based claims against her should be dismissed.

As to the remaining negligence-based claims (gross negligence, negligent supervision, and gross negligent supervision) against Defendants Jackson, Fayko, and Rubright, Plaintiffs have sufficiently pleaded that Defendants acted with malice or corruption. That suffices to withstand Defendants' motion as to gross negligence.

29

*See Est. of Long by & through Long v. Fowler*, 378 N.C. 138, 151, 861 S.E.2d 686, 696 (2021) ("Because willful or wanton conduct is a higher standard than gross negligence, this inquiry obviates any need to separately determine whether the complaint adequately states a claim for gross negligence."); *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (gross negligence requires pleading facts showing "wanton conduct done with conscious or reckless disregard for the rights and safety of others" in addition to the elements of basic negligence claim).

As to the negligent supervision and gross negligent supervision claims, Plaintiffs have pleaded sufficient facts to withstand Defendants' motion to dismiss. Defendants argue that the negligent supervision claim should be dismissed because Plaintiffs fail to "identify any specific employer-employee relationship between Defendants Jackson, Fayko, and Rubright to any negligent employee." (Defs. Jackson, Fayko, & Rubright's Mem. Supp. Mot. Dismiss at 21); *see also Medlin v. Bass*, 327 N.C. 587, 590–91, 393 S.E.2d 460, 462 (1990) (elements of negligent supervision). But Plaintiffs have sufficiently pleaded that these Defendants occupied high-level positions within the County's DSS and Department of Health and Human Service and were directly involved with the social workers and Defendant Leipold in prosecuting the petition, placing J.H.H. in non-secure custody, and establishing the out-of-home placement of J.R.H. and J.D.H. (*See, e.g.,* Am. Compl. ¶¶ 5–6, 8–9, 12–13, 19–20, 75, 78, 96–98, 100, 102–06, 140, 146, 151–52, 156, 166, 179, 187–93, 196–97, 202–03, 208, 210–11, 214–16, 235–55.) Furthermore, for the reasons previously explained, Plaintiffs have sufficiently pleaded that Defendants acted with malice or

corruption, thereby satisfying the facial plausibility standard as to gross negligent supervision. *See Toomer*, 155 N.C. App. at 482, 574 S.E.2d at 92.

        4.     Eleventh Claim for Relief – Civil Conspiracy against All Defendants

Plaintiffs have asserted a state civil conspiracy claim against all defendants. (Am. Compl. ¶¶ 394–99.) To bring a civil conspiracy claim under North Carolina law, a plaintiff must allege "(1) the existence of a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a proximate result of the conspiracy." *Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n, Inc.*, 255 N.C. App. 236, 250, 805 S.E.2d 147, 156 (2017).

Defendants argue this claim should be dismissed based on the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine "holds that, since at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007), *aff'd in part, rev'd in part,* 362 N.C. 431, 666 S.E.2d 107 (2008). Alleging that a corporation conspired with its own agents, officers, or employees is effectively an accusation that the corporation conspired with itself and is insufficient to establish a civil conspiracy claim. *Id.*; *see also Seguro-Suarez by & through Connette v. Key Risk Ins. Co.,* 261 N.C. App. 200, 218, 819 S.E.2d 741, 755 (2018).

Plaintiffs allege Defendants acted "pursuant to a scheme to misrepresent, conceal and omit material facts in order to unlawfully keep J.H.H. out of the Hollands'

custody, to separate the minor children from the Hollands and to violate the Plaintiffs' constitutional rights." (Am. Compl. ¶ 395.) Plaintiffs allege these actions were done "intentionally, willfully and wantonly and in collective furtherance of the scheme to keep J.H.H. out of the Hollands' custody . . . and to violate Plaintiffs' constitutional rights." (*Id.* ¶ 397.) Plaintiffs acknowledge that Defendants all worked within the same entity and the actions were taken "on behalf of [New Hanover County DSS]," (*id.* ¶ 396), but they do not address the intracorporate conspiracy doctrine in their response brief (*see* Pls.' Resp. Opp'n Mots. Dismiss at 29–30). Because Defendants were part of the same entity and an entity cannot conspire with itself, Plaintiffs' claim for civil conspiracy should be dismissed.

5. Twelfth Claim for Relief – Intentional Infliction of Emotional Distress ("IIED") against All Defendants

For the reasons previously discussed, Defendant Leipold is entitled to prosecutorial immunity and Defendant New Hanover County is entitled to governmental immunity. Accordingly, Plaintiffs' IIED claims against Defendant Leipold and Defendant New Hanover County should be dismissed.

Defendants Jackson, Fayko, and Rubright argue Plaintiffs have failed to plausibly allege that Defendants engaged in extreme and outrageous conduct and that Plaintiffs suffered severe emotional distress as a result. (Defs. Jackson, Fayko, & Rubright's Mem. Supp. Mot. Dismiss at 23–25 (citing *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 334 (1981), for the elements of IIED).) The court rejects these arguments for the following reasons.

First, as previously explained, Plaintiffs have pleaded sufficient facts from which it could be inferred that Defendants Jackson, Fayko, and Rubright acted in an extreme or outrageous manner in connection with the prosecution of the petition against the Hollands, the non-secure custody placement of J.H.H., the out-of-home placement of J.D.H. and J.R.H., and by making a false criminal report to the New Hanover County Sheriff. Second, Plaintiffs are not required to plead severe emotional distress with the level of detail that Defendants suggest. *See McCallister v. Ha*, 347 N.C. 638, 646, 496 S.E.2d 577, 583 (1998) (allegations of severe emotional distress premised on fears regarding health and sleeplessness sufficient for purposes of pleading). Finally, Defendants' reliance on *Pratt v. Allbritton*, No. 4:16-CV-198-BR, 2018 WL 4610151 (E.D.N.C. Aug. 8, 2018), *M. & R. adopted*, 2018 WL 4604522 (E.D.N.C. Sept. 21, 2018), is misplaced. (Defs. Jackson, Fayko, & Rubright's Mem. Supp. Mot. Dismiss at 24.) *Allbritton* analyzed an IIED claim on a motion for summary judgment, thereby applying a more exacting standard than that applicable in a Rule 12(b)(6) motion. Accordingly, Defendants' motion to dismiss Plaintiffs' IIED claims against Defendants Jackson, Fayko, and Rubright should be denied.

## CONCLUSION

For the reasons explained above, it is RECOMMENDED that Defendants' motions to dismiss [DE ## 49, 51, 54] be GRANTED IN PART and DENIED IN PART as follows:

1.     The motions should be DENIED AS MOOT as to the claims voluntarily dismissed by Plaintiffs (*see* Notices Voluntary Dismissal [DE ##45, 48, 64]);

2.     The motions should be GRANTED as to the following claims, which should be DISMISSED:

- First Claim for Relief (Negligence) against Defendant Leipold on the basis of prosecutorial immunity;

- Second Claim for Relief (Gross Negligence) against Defendant Leipold on the basis of prosecutorial immunity;

- Eighth Claim for Relief (§ 1983 Due Process) against Defendant Leipold on the basis of prosecutorial immunity;

- Eighth Claim for Relief (§ 1983 First Amendment, Fourth Amendment, and Fourteenth Amendment Procedural Due Process) against all Defendants for failure to state a claim;

- Tenth Claim for Relief (§ 1983 Equal Protection) against all Defendants for failure to state a claim;

- Eleventh Claim for Relief (Civil Conspiracy) against all Defendants for failure to state a claim[7]; and

- Twelfth Claim for Relief (IIED) against Defendant Leipold and Defendant New Hanover County on the basis of prosecutorial and governmental immunity; and

3.     The motions should be DENIED as to the following claims, which should be allowed to proceed:

- Second Claim for Relief (Negligence) against Defendants Jackson, Fayko, and Rubright in their individual capacities;

- Third Claim for Relief (Gross Negligence) against Defendants Jackson, Fayko, and Rubright in their individual capacities;

- Sixth Claim for Relief (Negligent Supervision) against Defendants Jackson, Fayko, and Rubright in their individual capacities;

---

[7] Prosecutorial immunity and governmental immunity would also require dismissal of this claim against Defendant Leipold and Defendant New Hanover County, respectively.

34

- Seventh Claim for Relief (Gross Negligent Supervision) against Defendants Jackson, Fayko, and Rubright in their individual capacities;

- Eighth Claim for Relief (§ 1983 Due Process) against Defendants Jackson, Fayko, and Rubright in their individual capacities;

- Ninth Claim for Relief (§ 1983 Due Process) against Defendant New Hanover County; and

- Twelfth Claim for Relief (IIED) against Defendants Jackson, Fayko, and Rubright in their individual capacities.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 16, 2026,** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from

appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 1st day of February 2026.

_____
KIMBERLY A. SWANK
United States Magistrate Judge