IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-417-BO-KS

| | | |
|---|---|---|
| WILLIAM H. HOLLAND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NEW HANOVER COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on the memorandum and recommendation (M&R) of

United States Magistrate Judge Kimberly A. Swank. [DE 65]. Defendants each moved to dismiss.

[DE 49]; [DE 51]; [DE 54]. The M&R recommended that the motions be granted in part and denied

in part. [DE 65, p. 2]. Plaintiffs filed an objection [DE 66] and defendants responded [DE 67]; [DE

68]; [DE 69]. A hearing was held before the undersigned on March 12, 2026 in Raleigh, North

Carolina. In this posture, the matter is ripe for disposition. For the following reasons, the M&R is

adopted in part and rejected in part.

## BACKGROUND

The following factual recitation is drawn from the plaintiffs' amended complaint [DE 1-3];

[DE 1-4]. The Hollands, plaintiffs, are a family of five. William and Kathleen Holland are the

natural parents of two minor children, J.D.H. and J.R.H. Their third and youngest child, J.H.H., is

adopted. [DE 1-3, p. 66, ¶ 2]. On June 29, 2022, the adoption agency informed the Hollands that

J.H.H.'s birth mother had selected the Hollands as an adoptive family. [DE 1-4, ¶ 37]. During the

pregnancy, the birth mother drank alcohol, smoked cigarettes, and took Adderall and blood

pressure medication. She also declined medical care after being involved in a traffic accident late

in the pregnancy. *Id.* at ¶¶ 39–40. The Hollands knew when they adopted him that J.H.H. would

likely have special medical needs. *Id.* at ¶ 41. J.H.H. tested positive for controlled substances at birth. *Id.* at ¶ 44.

After he was born, J.H.H. went home from the hospital with the Hollands. *Id.* at ¶ 42. The adoption agency retained legal custody pending the adoption decree, but the Hollands had physical custody, financial responsibility, and medical decision-making authority. *Id.* at ¶ 43. Within a couple months, J.H.H. fell sick and the Hollands took him to a doctor. *Id.* at ¶ 49. After observing that J.H.H.'s head was bulging and he had "sunsetting eyes," the doctor sent him for a CT scan which revealed a subdural hematoma. *Id.* at ¶¶ 53–57. J.H.H. underwent preventive surgery to account for the possibility of later-developing brain swelling. *Id.* at ¶¶ 60–61. The neurosurgeon who performed the surgery informed the Hollands that it is standard protocol to refer unexplained subdural hematomas to the Child Abuse Clinic for further evaluation, because subdural hematomas are signs of possible child abuse. *Id.* at ¶ 62. The clinic then made a report to New Hanover County Department of Social Services (DSS) regarding J.H.H., and the Hollands found themselves under investigation. *Id.* at ¶¶ 63–67.

Defendant Mona Leipold, an attorney with the DSS, filed a petition in New Hanover County Juvenile Court alleging dependency, abuse, and neglect as to the Hollands' three children and requesting emergency nonsecure custody of J.H.H. *Id.* at ¶ 81. On October 10, 2022, DSS informed the Hollands of the petition, took custody of J.H.H., and told the Hollands to leave the hospital immediately. *Id.* at ¶ 94. Coordinating with the New Hanover County DSS, the Orange County Department of Social Services proposed a voluntary "safety plan" requiring the children to live with Kathleen Holland's parents (the maternal grandparents) and prohibiting William and Kathleen Holland from interacting with the children unsupervised. *Id.* at ¶¶ 68–69. New Hanover County DSS did not take custody of the Hollands' biological children, J.D.H. and J.R.H., but

2

"pressured the Hollands to continue the Safety Plan via threats communicated by Leipold to file for nonsecure custody of J.D.H. and J.R.H." *Id.* at ¶ 98. Defendant Tonya Jackson, Director of New Hanover County DSS, delivered a document to UNC Medical Center authorizing foster parents to consent to medical treatment of J.H.H., but mischaracterized his medical needs. *Id.* at ¶¶ 96–97.

Even as doctors began to issue exculpatory medical opinions, Leipold and DSS continued to prosecute the case against the Hollands. Intending to impede the Hollands' ability to finalize J.H.H.'s adoption, DSS placed the Hollands on the "responsible individuals list," which is a "child abuse registry" that identifies individuals deemed responsible in substantiated cases of abuse or serious neglect. *Id.* at ¶¶ 187, 189. Following a hearing, on April 11, 2023, the state Juvenile Court found DSS failed to meet its burden of proof and dismissed the petition against the Hollands. *Id.* at ¶¶ 231–32. No medical evidence ever emerged that the Hollands had abused any of the children.

Plaintiffs initiated this action in North Carolina state court and filed an amended complaint there. Defendant New Hanover County removed the case to this Court based on federal question jurisdiction. [DE 1]. Defendants moved separately to dismiss the claims asserted against them. [DE 49]; [DE 51]; [DE 54]. Plaintiffs voluntarily dismissed certain parties and claims. The remaining defendants include Tonya Jackson (director of New Hanover County DSS), Donna Fayko (Health and Human Services Director of New Hanover County), and Mary Beth Rubright (assistant director of social work for New Hanover County DSS).

The following claims remain pending against the following defendants in their individual capacities: (1) negligence against defendant Leipold, (2) negligence against defendants Jackson, Fayko, and Rubright, (3) gross negligence against defendants Leipold, Jackson, Fayko, and Rubright, (4) negligent supervision against defendants Jackson, Fayko, and Rubright, (5) gross

3

negligent supervision against defendants Jackson, Fayko, and Rubright, (6) deprivation of First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 against defendants Jackson, Fayko, Rubright, and Leipold, (7) deprivation of due process under § 1983 and *Monell* against defendant New Hanover County, (8) violation of equal protection under § 1983 against defendant New Hanover County and defendants Jackson, Fayko, Rubright, and Leipold, (9) state-based civil conspiracy against defendant New Hanover County and defendants Jackson, Fayko, Rubright, and Leipold, and (10) intentional infliction of emotional distress (IIED) against defendant New Hanover County and defendants Jackson, Fayko, Rubright, and Leipold.

Magistrate Judge Swank recommended dismissal of all claims against defendant Leipold on the basis of prosecutorial immunity, the state law claims against New Hanover County based on governmental immunity, the First and Fourth Amendment claims and procedural due process claim against all defendants, the equal protection claim against all defendants, and the civil conspiracy claim against all defendants.

DISCUSSION

"The Federal Magistrates Act requires a district court to make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (cleaned up) (emphasis omitted); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A party's objections must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). "[W]hen reviewing pro se objections to a magistrate's recommendation, district courts must review de novo any articulated grounds to which the litigant appears to take issue." *Elijah v. Dunbar*, 66 F.4th 454, 460–61 (4th Cir. 2023). Where no specific objections have been

4

filed, the court reviews for clear error only. *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). On clear error review, the court has no obligation to explain its reasoning for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983). While a district judge "*must* make an independent determination of a magistrate judge's order upon objection, he is not *precluded* from reviewing a magistrate judge's order to which a party did not object." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760–61 (7th Cir. 2009) (citing *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006)) (emphasis in original). "[T]he district judge remains the final authority in the case, and he may reconsider *sua sponte* any matter determined by a magistrate judge." *Id.* at 760.

Plaintiffs objected generally to the M&R, arguing it improperly resolves inferences against plaintiffs. While the Court cannot identify any specific factual allegations the M&R construed in defendants' favor, it does accept some of plaintiffs' other objections, as discussed below.

## I. Prosecutorial Immunity

The M&R recommended dismissal of all claims against defendant Leipold based on prosecutorial immunity. Prosecutors, including attorneys who work for a department of social services, are immune from individual liability for acts taken in carrying out their prosecutorial functions. *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 135 (4th Cir. 1989). Absolute immunity protects, however, only advocative acts "intimately associated with the judicial process," not investigative or administrative conduct. *Id.* at 136, *see also Imbler v. Pachtman*, 424 U.S. 409 (1976); *Burns v. Reed*, 500 U.S. 478, 495–96 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259, 275–76 (1993).

In threatening to file a petition for non-secure custody of the Hollands' natural children, Leipold stepped away from her prosecutorial role, seeking to regulate the Hollands' conduct in

5

matters outside the ongoing juvenile case. This threat was not a mere attempt to keep the status quo while Leipold determined whether a petition for custody of the other children was warranted; plaintiffs allege that beyond the existence of an *unexplained* subdural hematoma in J.H.H., Leipold had *no* evidence the Hollands wrought any kind of abuse on their children. Rather, Leipold allegedly used the threat of another petition to leverage the Hollands' compliance and extend the family's separation.

This kind of activity is neither intimately associated with the judicial process nor prosecutorial in nature. The threat had a police-type function aimed at preventing future misconduct through coercive threats, somewhat like the conduct found extra-prosecutorial in *Burns*, 500 U.S. at 495 (no absolute immunity for giving legal advice to the police; "it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice") and *Buckley*, 509 U.S. at 276 (no absolute immunity for statements to the press or alleged fabrication of evidence before prosecution began. "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial"). Plaintiffs therefore allege facts plausibly suggesting Leipold is not entitled to absolute immunity, and her conduct should be evaluated under the same principles that apply to other officials.

Similarly, Leipold's assertions of public official immunity and qualified immunity are inappropriate for resolution at this stage. Public official immunity precludes certain suits against public officials in their individual capacities. "As long as a public officer lawfully exercises the

6

judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288 (2012) (citing *Smith v. State*, 289 N.C. 303, 331 (1976)). Plaintiffs plead facts supporting a plausible inference that Leipold acted with malice.

Defendants asserting qualified immunity at the 12(b)(6) stage face a "formidable hurdle." *Long v. City of Concord*, 623 F. Supp. 3d 647, 656 (E.D.N.C. 2022). The M&R found "whether the investigation into child abuse and prosecution of the petition were 'proper' is a fact-intensive inquiry. Plaintiffs have pleaded sufficient facts from which it could be reasonably inferred that Defendants' actions were not 'proper.'" [DE 65, p. 25]. The M&R concluded defendants were not entitled to qualified immunity at this stage, and the reasoning that the complaint sufficiently stated claims as to Jackson, Fayko, and Rubright is applicable to Leipold as well. If appropriate, Leipold may reassert her immunity arguments after the parties have had an opportunity for discovery. With the exception of the Fourth Amendment, procedural due process, equal protection, and civil conspiracy claims, plaintiffs plausibly allege their causes of action against defendant Leipold.

## II. Plaintiffs' Eighth Claim for Relief—First and Fourth Amendments, Due Process

Plaintiffs assert claims for violation of their First, Fourth, and Fourteenth Amendment rights. As to the Fourteenth Amendment, plaintiffs assert both substantive and procedural due process claims. The M&R recommended dismissal of the claims under the First and Fourth Amendment and the procedural due process claim as to all defendants.

The M&R found the First Amendment claim was duplicative of the Fourteenth Amendment claim, and suggested the facts were better analyzed under the Fourteenth Amendment. True, "most courts have recognized that rights of intimate association based on family relationships derive from the Due Process Clause of the Fourteenth Amendment." *Evans v. Pitt Cnty. Dep't of Soc. Servs.*,

972 F. Supp. 2d 778, 796 (E.D.N.C. 2013), *vacated in part on other grounds by Evans v. Perry*,

578 F. App'x 229 (4th Cir. 2014). However, a court in the Fourth Circuit has recognized that

> the First and Fourteenth Amendments each protect the right to familial association, and the two seemingly complement one another. [The Supreme Court's reliance in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), on] Fourteenth Amendment cases when describing the First Amendment doctrine proves that the two are one and the same. *See Roberts*, 468 U.S. at 619-20 (citing *Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967), for the proposition that the First Amendment "imposes constraints on the State's power to control the selection of one's spouse."). Put differently, those familial relationships worthy of substantive due process protection always have the distinguishing attributes *Roberts* found worthy of First Amendment protection.

*Jonathan R. v. Justice*, No. 3:19-CV-00710, 2023 WL 184960, at *11 (S.D.W. Va. Jan. 13, 2023).

Analysis of this issue appears appropriate under both the First and Fourteenth Amendments.

> Obviously, it is the Defendants' duty to interfere with the parent-child relationship under certain circumstances, and Defendants provide a necessary service to the community by doing so. But the facts that Plaintiffs have alleged do not describe a legitimate DSS investigation as much as they describe a campaign to drive a wedge between parents and their children for obviously illegitimate reasons and by clearly unacceptable means.

*Words of Faith Fellowship, Inc. v. Rutherford Cnty. Dep't of Soc. Servs.*, 329 F. Supp. 2d 675, 685

(W.D.N.C. 2004) (analyzing right to familial association under the Fourteenth Amendment).

Therefore, the plaintiffs' § 1981 claim may proceed on a First Amendment theory.

The M&R also recommended dismissal of the Fourth Amendment claim on qualified

immunity grounds. The Fourth Circuit has not "articulated the legal standard that applies to Fourth

Amendment unlawful seizure claims in the child removal context." *Parker v. Henry & William*

*Evans Home for Children, Inc.*, 762 F. App'x 147, 154 (4th Cir. 2019). Other circuits "have held

that officials may seize a child from her parents without a judicial order or parental consent only

where officials have reasonable cause to believe that imminent harm to a child does not leave

sufficient time to obtain judicial authorization prior to the removal." *Id.* at 155 (collecting cases).

8

Plaintiffs object to the recommendation of dismissal, arguing that *Parker* does not create a categorical bar to Fourth Amendment claims in child removal cases. In noting that it has not articulated the standard for such claims, the Fourth Circuit does seem to acknowledge a valid Fourth Amendment claim exists in the child removal context. Plaintiffs then cite *Wolf v. Fauquier Cty. Bd. of Supervisors* for the clearly established standard that child removals are unconstitutional when they constitute an "abuse of power which shocks the conscience." 555 F.3d 311, 323 (4th Cir. 2009) (cleaned up); *see also Weller v. Dep't of Soc. Servs. For City of Baltimore*, 901 F.2d 387, 391–92 (4th Cir. 2009). This argument cannot save the Fourth Amendment claim from dismissal because the "shocks the conscience" standard is a due process doctrine. "A claim brought under the Fourth Amendment must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Parker v. Austin*, 105 F. Supp. 3d 592, 598 (W.D. Va. 2015) (internal quotations and citations omitted). "Thus, plaintiffs' claims under the Fourth Amendment must be addressed according to a 'reasonableness standard.'" *Id.* (applying Seventh Circuit reasonableness test for child removal). While it seems plain from the Fourth Amendment's first principles that the removal alleged in this case may have been an unreasonable seizure, the Court cannot conclude that, in the child removal context, the law was clearly established.

The M&R recommended dismissal of the procedural due process claim, finding none of the complaint's allegations tend to show the procedures employed in the state juvenile case were constitutionally inadequate. Plaintiffs objected that defendants' misrepresentations to the Juvenile Court—namely, that there was evidence of abuse justifying the separation of the family—tainted the proceedings to the point they were not meaningful. The process itself, though, is not alleged to be insufficient. The Hollands had the opportunity at Juvenile Court hearings to respond to the alleged misrepresentations, and were ultimately successful. In *Weller*, 901 F.2d 387, 393–94, by

9

contrast, the Fourth Circuit found a procedural due process violation only when the plaintiff's children were removed and no hearing was afforded the plaintiff at all, before or after the removal.

### III. Equal Protection

The M&R recommended dismissal of plaintiffs' equal protection claim. To survive a motion to dismiss an equal protection claim, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011). Equal protection claims brought by a "class of one" can succeed only where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Siena Corp. v. Mayor & City Council of Rockville Maryland*, 873 F.3d 456, 465 (4th Cir. 2017) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiffs objected to dismissal, arguing "the decision to separate J.H.H. from J.D.H. and J.R.H. and to not place J.H.H. with relatives" was disparate treatment based on adoption status, and properly alleged in the complaint. [DE 1-4, ¶ 390]. Plaintiffs also alleged that there "is no rational basis for the arbitrary and capricious decision to afford the protection of due process to some individuals while ignoring them for others." *Id.* at ¶ 389.

The M&R reasoned that an equal protection claim based on denial of due process to some individuals, but not others, would be "tantamount to transforming every due process claim into an equal protection claim." [DE 65, p. 27]. Defendants also argued that the decision to place J.H.H. outside the Holland family, though related to his adoption status, had a rational basis. Because the adoption had not been finalized at the time of the removal, the Hollands were not technically J.H.H.'s "relatives" as defined by N.C.G.S. § 7B-101, and the Holland parents had legal custody

of their natural children, but not of J.H.H. Therefore, the Hollands' natural children are inappropriate comparators with respect to the decision to place J.H.H. in the custody of non-relatives. [DE 50, pp. 16–17]. This reasoning is persuasive, and the equal protection claim is dismissed.

## IV. Civil Conspiracy

The M&R recommended dismissal of the civil conspiracy claim based on the intracorporate conspiracy doctrine. To state a claim for civil conspiracy, plaintiffs must allege "(1) the existence of a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a proximate result of the conspiracy." *Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n, Inc.*, 255 N.C. App. 236, 250 (2017). However, "since at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 625 (2007), *aff'd in part, rev'd in part*, 362 N.C. 431 (2008).

In opposing the M&R's recommendation of dismissal, plaintiffs note that there are exceptions to the intracorporate conspiracy doctrine, "including where an agent has an independent personal stake." [DE 66, pp. 9–10] (citing *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)). All the defendants in this case worked within the same entity and all the relevant conduct was carried out on behalf of DSS. Because plaintiffs do not point to any allegations indicating an exception to the intracorporate conspiracy doctrine applies, the civil conspiracy claim is dismissed.

11

## V. Motion to Strike and Motion to Amend

Plaintiffs moved to strike [DE 70] New Hanover County's response in opposition [DE 67] to plaintiffs' objection to the M&R for exceeding the page limit described in Local Rule 7.2(f). New Hanover County then moved to amend [DE 71] its response. Because New Hanover County attached a shortened version of its response complying with the page limit, the motion to amend is granted and the motion to strike is denied as moot.

## CONCLUSION

For the foregoing reasons, the M&R [DE 65] is ADOPTED IN PART and REJECTED IN PART. The Court has reviewed the portions of the M&R not discussed in this order and finds no clear error. Defendants' motions to dismiss [DE49]; [DE 51]; [DE 54] are DENIED IN PART as MOOT to the extent they argue for dismissal of the claims already voluntarily dismissed by plaintiffs. They are GRANTED IN PART as to the Fourth Amendment and procedural due process claims under § 1983, the equal protection claim, and the civil conspiracy claim. The IIED claim against New Hanover County is also dismissed on the basis of governmental immunity. The motions to dismiss are otherwise DENIED. To the extent defendant Leipold moved to dismiss based on prosecutorial immunity, qualified immunity, or public official immunity, her motion to dismiss [DE 54] is DENIED IN PART WITHOUT PREJUDICE, so that she may reassert her immunity defenses. It is otherwise DENIED. Additionally, New Hanover County's motion to amend [DE 71] is GRANTED and plaintiffs' motion to strike [DE 70] is DENIED as MOOT.

The following claims will proceed as asserted against the following defendants in their individual capacities: (1) negligence against defendant Leipold, (2) negligence against defendants Jackson, Fayko, and Rubright, (3) gross negligence against defendants Leipold, Jackson, Fayko, and Rubright, (4) negligent supervision against defendants Jackson, Fayko, and Rubright, (5) gross

12

negligent supervision against defendants Jackson, Fayko, and Rubright, (6) deprivation of First Amendment and substantive due process rights under 42 U.S.C. § 1983 against defendants Jackson, Fayko, Rubright, and Leipold, (7) deprivation of First Amendment and substantive due process rights under § 1983 and *Monell* against defendant New Hanover County, and (8) IIED against defendants Jackson, Fayko, Rubright, and Leipold.

SO ORDERED, this **31** day of March 2026.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE